1   J. Russell Stedman (SBN 117130)
    rstedman@mail.hinshawlaw.com
2   Misty A. Murray (SBN 196870)
    mmurray@mail.hinshawlaw.com
3   Peter J. Felsenfeld (SBN 260433)
    pfelsenfeld@mail.hinshawlaw.com
4   HINSHAW & CULBERTSON LLP
    633 West 5th Street, 47th Floor
5   Los Angeles, CA 90071-2043
    Telephone:  213-680-2800
6   Facsimile:   213-614-7399
7
8   Attorneys for Plaintiff ZURICH
    AMERICAN LIFE INSURANCE COMPANY
9

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12                    WESTERN DIVISION

13

14   ZURICH AMERICAN LIFE            )  Case No. CV15-09681BRO(KSX)
     INSURANCE COMPANY, a New York   )
15   insurance company               )  **PLAINTIFF ZURICH AMERICAN**
                                      )  **LIFE INSURANCE COMPANY'S**
16              Plaintiff,            )  **COMPLAINT FOR (1) RESCISSION**
                                      )  **OF CONTRACT, (2) INTENTIONAL**
17        vs.                        )  **MISREPRESENTATION,**
                                      )  **(3) NEGLIGENT**
18   SERGEY GRISHIN, an individual,   )  **MISREPRESENTATION, AND**
     TIMOTHY PINKEVICH, an individual,)  **(4) DECLARATORY RELIEF**
19   DOVI FRANCES, an individual      )
                                      )
20              Defendants.           )
                                      )
21   _____ )

22

23            **REDACTED VERSION FILED PURSUANT**

24               **TO 12/29/2015 MINUTE ORDER**

25

26

27

28

1    Plaintiff ZURICH AMERICAN LIFE INSURANCE COMPANY ("ZALICO")

2    alleges as follows:

3                            **JURISDICTION AND VENUE**

4        1.    <u>Jurisdiction</u>.   This Court has jurisdiction over this action pursuant to

5    28 U.S.C. § 1332(a) in that the parties to this action are citizens of different states and

6    the amount in controversy, exclusive of interest and costs, exceeds $75,000.

7        2.    <u>Venue</u>.   Venue is proper in the Central District of California pursuant to

8    28 U.S.C. § 1391(a)(1), in that Defendants Sergey Grishin ("Grishin"), Timothy

9    Pinkevich ("Pinkevich") and Dovi Frances ("Frances") (collectively "Defendants") are

10   residents of this judicial district.   Further, venue is proper in this judicial district

11   pursuant to 28 U.S.C. § 1391(a)(2) in that a substantial part of the events giving rise to

12   the claims occurred in Santa Barbara County and Los Angeles County, California.

13                                   **PARTIES**

14       3.    Plaintiff ZALICO is a corporation organized and existing under and by

15   virtue of the laws of the State of Illinois, with its principal place of business in

16   Overland Park, Kansas.

17       4.    ZALICO is informed and believes and on that basis alleges that

18   Defendant Grishin is a Russian national who, at all relevant times, was and is a

19   permanent resident of the United States residing in the State of California, County of

20   Santa Barbara.   He is a California citizen for the purposes of diversity jurisdiction

21   under 28 U.S.C. § 1332(a).

22       5.    ZALICO is informed and believes and on that basis alleges that

23   Defendant Pinkevich is a citizen of the State of California, residing in the County of

24   Santa Barbara.

25       6.    ZALICO is informed and believes and on that basis alleges that

26   Defendant Frances is an Israeli national who, at all relevant times, was and is a

27   permanent resident of the United States residing in the State of California, County of

28   Santa Barbara.   He is a California citizen for the purposes of diversity jurisdiction

1    under 28 U.S.C. § 1332(a).

2        7.    At all times mentioned herein, each of the Defendants acted as the agent

3    or representative of each of the other Defendants, and in doing the acts herein alleged,

4    each Defendant was acting within the course and scope of the agency relationship

5    with each of the other Defendants, and with the permission and ratification of each of

6    the other Defendants.

7                        **FACTS COMMON TO ALL CLAIMS FOR RELIEF**

8        8.    ZALICO alleges on information and belief that at all relevant times

9    Defendants maintained a business relationship between them for their mutual benefit,

10   including, without limitation, Pinkevich and Frances acting as business managers for

11   Grishin.  ZALICO alleges, on information and belief, that in or about August 2013,

12   and in connection with their business relationship, Defendants agreed to apply for and

13   obtain a life insurance policy for their collective benefit, and further agreed that:

14   (a) Grishin would be the insured under the policy; Pinkevich and Frances would be the

15   owners and beneficiaries of the policy in order to replace the loss of income they

16   would suffer in the event of Grishin's death; and Defendants would supply insurers

17   with the information and take all actions required to apply for and obtain this

18   insurance.

19       9.    ZALICO alleges, on information and belief, that in furtherance of this

20   agreement Defendants requested that Krupin Partners LLC ("Krupin") seek and obtain

21   a life insurance policy for them.

22       10.    On or about September 12, 2013, ZALICO received a request prepared

23   by Krupin seeking an informal quote for a policy insuring Grishin.  This request was

24   accompanied by various materials, including certain medical records for Grishin and a

25   standard questionnaire relating to Grishin's medical history commonly referred to as

26   "Application Part II."  Grishin signed the Application Part II on August 24, 2013,

27   confirming that he had read the answers and statements in it and they were complete

28   and true to the best of his knowledge and belief.

ZURICH AMERICAN LIFE INSURANCE COMPANY'S COMPLAINT

3480602v1 0979788

11.     Question 5 of the Application Part II asked the proposed insured: ████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

12.     In response to Questions 5a, 5c and 5b of the Application Part II, Grishin responded ████

13.     Question 2a of the Application Part II asked the proposed insured to state the "Name and address of personal physician (or medical facility if used instead)."

14.     In response to Question 2a of the Application Part II, Grishin responded:

████████████████████████████████

15.     In response to Question 4j of the Application Part II, Grishin identified a ████████████ as a physician who had treated him.

16.     Question 6a of the Application Part II then asked the proposed insured: "Other than previously stated, have you within the past five years:  a. Consulted a physician or any other practitioner, had a checkup, illness, surgery or been hospitalized?"

17.     In response to Question 6a of the Application Part II, Grishin responded "No."

18.     In reliance on the information it received on or about September 12, 2013, including the Application Part II, ZALICO, on or about September 17, 2013, provided a "Tentative Trial Quote" for a $20 million life insurance policy insuring the life of Grishin.  The Tentative Trial Quote stated that in order for a formal offer to be made ZALICO would require a formal application and additional information, including medical information.

19.     On or about December 18, 2013, ZALICO received a request prepared by Krupin indicating it was a "FINAL APPLICATION."  This request included several documents, including a formal "Application Part I" for a policy insuring the life of Grishin for $20 million.  The Application Part I was signed by all Defendants on

4

December 17, 2013.  It identified Grishin as the proposed insured and Pinkevich and Frances as proposed equal beneficiaries and policy owners.  Pinkevich's and Frances's relationship to Grishin was described as "Business Managers."  The Remarks section of the Application Part I stated:  "Purpose of insurance is to provide protection and replacement of income in the event of the death of Sergey Grishin."

20.    Under Section F of the Application Part I, entitled "Proposed Insured(s) Personal History," Question 5 asked: ██████████████████████████████████ ██████████████████████████████████████████████████████████████ ████████████████████████████████

21.    The response to Section F, Question 5 of the Application Part I was ████

22.    During its underwriting process, ZALICO received a report on Grishin from the Medical Information Bureau ("MIB"), a reporting agency that provides medical information about insurance applicants to insurers.  The information ZALICO obtained from the MIB during the underwriting process was consistent with the Application Part I, Application Part II, and the medical records and other information for Grishin that it possessed at the time.

23.    During its underwriting process, ZALICO also obtained a "ScriptCheck" report for information about Grishin's prescription drug history.  The resulting report, dated December 19, 2013, indicated that Grishin earlier that year had obtained prescriptions from ███████████████████████████████████████ ██████████████ ZALICO was aware of ███████████████████████ from the information previously submitted to it, however, this was the first indication to ZALICO that ████████ had treated Grishin.  The ScriptCheck report showed ████████ as having a family practice specialty in San Francisco.

24.    Based on the ScriptCheck report, ZALICO requested that it be provided Grishin's medical records for treatment by ████████.  Krupin then sent an e-mail on December 20, 2013 to Defendants Pinkevich and Frances stating in relevant part: "With regard to the Zurich Key Man policy.. when [sic] the carrier did the prescription

5

1  check it showed that he is being prescribed medication by a ████████ in

2  San Francisco but we do not have medical records for this doctor.  The UW wants to

3  see the records for the past 5 years from ██████.  Do you know anything about this

4  doctor?"

5       25.    In response, ZALICO was sent a copy of an e-mail dated December 20,

6  2013 authored by Pinkevich and copied to Frances, stating:  "I just spoke to Sergey

7  [Grishin] and he does not recall this doctor.  Sometime between 1997-1999 he lived in

8  SF.  However, he does not remember visiting this doctor.  All he remembers is that

9  some doctor prescribed him … in SF.  I have no other info or documents about this

10  Doctor, it was way before my time."

11      26.    In reliance on the Application Part I, Application Part II, Pinkevich's

12  December 20, 2013 e-mail, and other information submitted and obtained during the

13  underwriting process, ZALICO agreed to issue the requested policy, and to put it in

14  force provided certain requirements were met.

15      27.    One such requirement was an executed amendment to Question 6a of the

16  Application Part II (the "Amendment") confirming the representation that Grishin had

17  not been treated or prescribed medications by ████████ in the last five years.  The

18  Amendment stated in part:  "**Application Part II Question 6A: Other than**

19  **previously stated, have you within the past five years:  Consulted a physician or**

20  **any other practitioner, had a checkup, illness, surgery or been hospitalized.**

21  **Answer:**  Have not consulted ████████ in the last five years or had

22  medications prescribed by this physician."

23      28.    On December 23, 2013, ZALICO issued life insurance Policy No.

24  176915 providing a death benefit of $20 million (the "Policy").  The Policy was

25  provided to Krupin for delivery and would become effective upon satisfaction of

26  specific requirements, including without limitation execution of the Amendment and

27  payment of premiums.

28      29.    Krupin delivered the Policy on December 24, 2013.  All Defendants

signed the Amendment on that date.  In addition to amending the answer to Question 6a of the Application Part II, the Amendment Defendants executed contained an acknowledgement by the proposed insured that he had not "Acquired any knowledge or belief that any statements made in the application are now inaccurate or incomplete."  The Amendment also stated, in relevant part:

> I/We understand that the statements and responses to the questions will be made a part of the policy identified above should the company accept my/our requested changes.  I/We understand that if any statement above is not true, I/We should not sign this form, and I/we should have the policy returned to the company with full details for further underwriting consideration.

30.    In December 2013, ZALICO received the first premium payment on the Policy in the amount of $172,160.00.  ZALICO received three additional premium payments on the Policy, in January, February and March 2014.  ZALICO received a total of $688,640.00 in premiums from or on behalf of the policy owners.

31.    In connection with the sale of the Policy, ZALICO paid commissions to third parties totaling $878,016.01.

32.    A true and correct copy of the Policy is attached hereto as Exhibit "A" (with redaction of certain non-relevant personal information from the application).

33.    The Policy contains a two-year Incontestability Clause that provides in relevant part: "**INCONTESTABILITY.**  Subject to applicable law in the state where this policy is delivered.  We will not contest this policy after it has been in force during the lifetime of the Insured for two years from the Issue Date…."

34.    On or about September 22, 2015, ZALICO received an automatic followup report from the MIB regarding Grishin.  This report reflected Report Codes

1  ████████████████████████████████████████████████████

2  ████████████████████████ None of these three codes had appeared in any

3  prior MIB report that ZALICO received during its underwriting the Policy and before

4  issuance or delivery of the Policy.

5      35.    On or about September 28, 2015, ZALICO requested that the MIB

6  provide details on the new Report Codes.

7      36.    On or about September 29, 2015, ZALICO was informed that additional

8  information could be obtained from ████████████ at the ████████████

9  ████████████████████ ZALICO then obtained Grishin's records from the

10 ██████

11     37.    These ██████ records listed Pinkevich as Grishin's emergency contact

12 and next of kin.

13     38.    These ██████ records showed Grishin had received inpatient treatment at

14 this facility for ████████████████████████ ending

15 just 16 days before Grishin signed the Application Part II.

16     39.    Among other things, these ██████ records included a ████████████

17 form dated July 19, 2013, stating that Grishin reported to a ████████████

18 ████████████████████████████████████████████████████

19 ████████████████████████████████████████████████████

20 ████████████████████████████████████████████████████

21 ████ ██████████████████████ ██████████████████████ ████

22 ████████████████████████████████████████████████████

23 ██████████ ████████████████████████████████████████████

24 ████████████████████████████████████████████████████

25 ████████████████████████████████████████████

26     40.    These ██████ records also indicated that Grishin had reported to PMTC a

27 history ████████████████████

28     41.    These ██████ records also indicated that ████████████ had treated Grishin,

8

1  including issuing ███████████████████████ Grishin, and that

2  ██████ had prescribed medications for Grishin.

3      42.    This action is being filed before the expiration of the Policy's two-year

4  contestability period.

5                              **FIRST CLAIM FOR RELIEF**

6                                    **(Rescission)**

7      43.    ZALICO hereby incorporates by reference as though fully set forth here

8  the allegations appearing in paragraphs 1 through 42, inclusive.

9      44.    California Insurance Code § 330 defines "Concealment" as follows:

10          Neglect to communicate that which a party knows, and
11          ought to communicate, is concealment.

12      45.    California Insurance Code § 331 states:

13          Concealment, whether intentional or unintentional, entitles
14          the injured party to rescind insurance.

15      46.    California Insurance Code § 332 states:

16          Each party to a contract of insurance shall communicate to
17          the other, in good faith, all facts within his knowledge
18          which are or which he believes to be material to the
19          contract and as to which he makes no warranty, and which
        the other has not the means of ascertaining.

20      47.    California Insurance Code § 338 states:

21          An intentional and fraudulent omission, on the part of one
22          insured, to communicate information on matters proving or
23          tending to prove the falsity of the warranty, entitles the
        insurer to rescind.

24      48.    California Insurance Code § 359 states:

25
26          If a representation is false in a material point, whether
27          affirmative or promissory, the injured party is entitled to
        rescind the contract from the time the representation
28          becomes false.

1    49.    Grishin answered ███ in response to Section F, Question 5 of the

2    Application Part 1, which asked: ████████████████████████████████

3    █████████████████████████████████████████████████████████████████

4    ██████████████████████████████████    This was a material

5    misrepresentation and a concealment of facts which were material to the underwriting

6    and issuance of the Policy.

7    50.    Grishin answered ███ to Questions 5a, 5b and 5c on the Application

8    Part II, which asked: ███████████ ██████████████████████████████

9    █████████████████████████████████████████████████████████████████

10   █████████████████████████████████████████████████████████████████

11   ██████████████████    This was a material misrepresentation and a concealment

12   of facts which were material to the underwriting and issuance of the Policy.

13   51.    Grishin answered "No" to Question 6a on the Application Part II, which

14   asked:    "Other than previously stated, have you within the past five years:

15   a. Consulted a physician or any other practitioner, had a checkup, illness, surgery or

16   been hospitalized?"  This was a material misrepresentation and a concealment of facts

17   which were material to the underwriting and issuance of the Policy.

18   52.    In the signed Amendment to Application Part II, Defendants represented

19   that Grishin had "not consulted ██████████████ in the last 5 years or had

20   medications prescribed by this physician."  This was a material misrepresentation and

21   a concealment of facts which were material to the underwriting and issuance of the

22   Policy.

23   53.    The true facts were that:

24        a.    From July 19, 2013 to August 8, 2013, Grishin received ███████

25   ███████████████████████████████

26        b.    In 2013 ██████████████████████████████████████████

27   █████████████████ and

28        c.    Grishin had ██████████████████████████████████████.

54.     ZALICO issued and delivered the Policy in justifiable reliance upon the truthfulness, candor and accuracy of the information provided by Defendants, including, without limitation, the information contained in the Application Part I, the Application Part II and the Amendment.

55.     Defendants' misrepresentations and concealments were material.    If ZALICO had known the true facts about Grishin's ███████████████ therefor, that alone would have been enough to cause it to decline to issue the Policy. If ZALICO had known the true facts about Grishin's ███████████    that alone would have been enough to cause it to decline to issue the Policy.  Grishin's ███████ ██ was material and it would have been a contributing factor that would have caused ZALICO to decline to issue the Policy.  The fact that Defendants failed to disclose Grishin's ████████████████████████████████ ██ entitles ZALICO to rescind the Policy.

56.     ZALICO has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF
### (Intentional Misrepresentation)

57.     ZALICO hereby incorporates by reference as though fully set forth here the allegations appearing in paragraphs 1 through 56, inclusive.

58.     In the process of applying for the Policy, Grishin falsely represented to ZALICO that:

a.   He had not received ██████████████████████ ████████████████████████████

b.   He had not used ██████████████████████ physician;

c.    He had not consulted ████████ in the last five years or had medications prescribed by ████████ and

d.   He had not, within the past five years, consulted a physician or any other practitioner, had a checkup, illness or been hospitalized, except as

1    stated in the Application Part II.

2    59.    The above representations made by Grishin were false.  The true facts

3    were that:

4    a.  From July 19, 2013 to August 8, 2013, he received ██████████

5    ████████████████████████████████████

6    b.  In 2013 ████████████████████████████████████

7    ██████████████ and

8    c.  He had ████████████████████████████.

9    60.    Grishin was aware of the falsity of the above representations at the time

10   they were made.

11   61.    Grishin made the aforementioned false representations for the purpose of

12   inducing ZALICO to rely upon them with respect to underwriting and issuing the

13   Policy.  The false representations were material to ZALICO's decision to issue and

14   deliver the Policy.

15   62.    Defendants Pinkevich and Frances are vicariously liable for the above

16   false representations by Grishin by virtue of their agency relationship with Grishin,

17   and each other, in connection with applying for and obtaining the Policy.

18   63.    Defendants had a duty to disclose to ZALICO correct and complete

19   information in connection with the application for the Policy.

20   64.    ZALICO was unaware that the aforementioned representations were false

21   at the time it issued the Policy, permitted delivery and accepted premiums.  ZALICO

22   acted in justifiable reliance on Defendants' false representations by, among other

23   things, issuing the Policy under the terms presented.  Had ZALICO known the truth

24   regarding the above representations, it would not have issued the Policy.

25   65.    ZALICO did not discover the intentional misrepresentation until after it

26   issued the Policy and the Policy became effective.

27   66.    ZALICO suffered damages legally caused by Defendants' intentional

28   misrepresentations including, but not limited to, the costs associated with:

underwriting, issuance of the Policy, payment of commissions, administration, service, and investigations associated with the Policy, in addition to those expenses incurred in bringing this action.

### THIRD CLAIM FOR RELIEF
### (Negligent Misrepresentation)

67.     ZALICO hereby incorporates by reference as though fully set forth here the allegations appearing in paragraphs 1 through 56, inclusive.

68.     In the process of applying for the Policy, Defendants falsely represented to ZALICO that:

    a.   Grishin had not received ███████████████

███████████████████████████████

    b.   Grishin had not ██████████████████████████

██████

    c.   Grishin had not consulted ████████ in the last five years or had

████████████████████ and

    d.   Grishin had not, within the past five years, consulted a physician or any other practitioner, had a checkup, illness or been hospitalized, except as stated in the Application Part II.

69.     The above representations made by Defendants were false.  The true facts were that:

    a.   From July 19, 2013 to August 8, 2013, Grishin received ███████

█████████████████████

    b.   In 2013 ████████████████████████ Grishin

███████████████ and

    c.   Grishin had ██████████████████████████

70.     Defendants made the above representations, which were material to ZALICO 's decision to issue the Policy, without any reasonable ground for believing them to be true at the time they were made.

13

71.    Defendants made the aforementioned false representations for the purpose of inducing ZALICO to rely upon them and to act in reliance upon them with respect to underwriting and issuing the Policy.

72.    Defendants had a duty to disclose to ZALICO correct and complete information in connection with the application for the Policy.  Defendants Pinkevich and Frances are vicariously liable for the false representations and concealments by Grishin by virtue of their agency relationship with Grishin, and each other, in connection with applying for and obtaining the Policy.  Defendants Pinkevich and Frances are also directly liable because, having signed the Application Part I and the Amendment to the Application Part II, and having provided other information to ZALICO, they had a duty of reasonable inquiry and disclosure under the circumstances, and failed to satisfy that duty.

73.    ZALICO was unaware that the aforementioned representations were false at the time it issued the Policy and it became effective.  ZALICO acted in justifiable reliance on Defendants' false representations by, among other things, issuing the Policy under the terms presented.  Had ZALICO known the truth regarding the above representations, it would not have issued the Policy.

74.    ZALICO did not discover the negligent misrepresentations until after ZALICO had issued the Policy and it became effective.

75.    ZALICO suffered damages legally caused by Defendants' negligent misrepresentations including, but not limited to, the costs associated with: underwriting, issuance of the Policy, payment of commissions, administration, service, and investigations associated with the Policy, in addition to those expenses incurred in bringing this action.

## FOURTH CLAIM FOR RELIEF
### (Declaratory Relief)

76.    ZALICO hereby incorporates by reference as though fully set forth here the allegations appearing in paragraphs 1 through 75, inclusive.

3480602v1 0979788

1   77.   An actual controversy has arisen and now exists between ZALICO and

2   Defendants concerning their respective rights and duties under the Policy.

3   78.   Based on the information obtained after the Policy became effective,

4   ZALICO has determined that Defendants made material misrepresentations and

5   concealed material information concerning Grishin's ███████████████████████

6   ███████

7   79.   Had Defendants provided accurate and complete information, ZALICO

8   would not have issued or delivered the Policy.  As a result, ZALICO is entitled to

9   rescind the Policy.

10   80.   As a result of Defendants' conduct described above, ZALICO is entitled

11   to keep the premium payments made on the Policy, and not return those premiums as

12   a condition to rescission, because they are less than the costs ZALICO incurred in

13   connection with the underwriting, issuance and delivery of the Policy.

14   81.   ZALICO is informed and believes and on that basis alleges that

15   Defendants, and each of them, dispute the contentions that ZALICO set forth in

16   paragraphs 78, 79 and 80 of this Complaint, and that they contend to the contrary.

17   82.   By reason of the foregoing, there now exists an actual, justiciable

18   controversy between the parties.  The Court is vested with the power in this case to

19   declare and adjudicate the rights and legal relationships of the parties to this action

20   with reference to the issues raised by this Complaint.

21   83.   ZALICO desires a judicial determination of the rights and obligations of

22   each of the parties to this action with respect to the Policy.  Specifically, ZALICO

23   requests that this Court find that its contentions as set forth in paragraphs 78, 79 and

24   80 of this Complaint are correct.

25   84.   A judicial determination is necessary, appropriate and desirable at this

26   time in order that each of the parties may ascertain their respective rights and duties as

27   to one another and may conduct themselves accordingly now and in the future.

28   //

## PRAYER FOR RELIEF

WHEREFORE, ZALICO respectfully requests as follows:

On the First and Fourth Claims for Relief:

1. That this Court grant ZALICO relief based upon rescission of the Policy described herein, including entry of an Order by this Court with respect to the Policy decreeing the rights and obligations of the parties in accordance with ZALICO's contentions as set forth in paragraphs 78 – 80 above, and further declaring:

2. That the Policy is rescinded and of no force or effect;

3. That ZALICO may retain all of the premiums paid on the Policy, and any interest thereon, to offset its costs associated with issuing the Policy;

4. That Defendants, and each of them, are estopped from seeking a return of the premiums paid on the Policy to the extent necessary to restore the parties to the status quo and otherwise offset ZALICO 's costs as described above;

On the Second and Third Claims for Relief:

5. An award of compensatory damages according to proof;

On all Claims for Relief:

6. Its costs of suit incurred herein, including such reasonable attorneys' fees as may be allowed by case or statutory authority; and

7. For such other and further relief as the Court deems proper and just.

Dated:  December 16, 2015                    HINSHAW & CULBERTSON LLP


                                             By:  /s/ Misty A. Murray
                                                  J. RUSSELL STEDMAN
                                                  MISTY A. MURRAY
                                                  PETER J. FELSENFELD
                                                  Attorneys for Plaintiff ZURICH
                                                  AMERICAN LIFE INSURANCE
                                                  COMPANY